UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-20184-CR-MORENO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

GEORGE ANTONIO COREY.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO SUPPRESS POST-ARREST STATEMENTS

    The defendant seeks to suppress statements made by him without benefit of the *Miranda* warnings during a custodial interrogation after being arrested for possessing a firearm as a convicted felon. The Court finds that the arresting officer's question of what was he doing in the area was not simply a biographical question subject to the booking exception but a question that was reasonably likely to elicit an incriminating response. Accordingly, the defendant's post-arrest response, while handcuffed in the police care was a product of the interrogation and is excluded.

### BACKGROUND

    Defendant is charged with knowingly possessing a firearm while having previously been convicted of a felony, violating 18 U.S.C. § 922(g)(1). In July of 2011, Miami Police Officer Albert Pagan was approached by an unidentified woman at 7th Avenue and Northwest 8th street in Miami. She told Pagan that two men nearby were presently armed, were involved in a recent shooting, and one owned an AK-47. Pagan alerted the members of his unit, including Officer Alexis Perez, who was the sole witness at the suppression hearing.

    The two men, later identified as defendant George Corey and Ray Rahming, were

approached by Officer Perez as she drove a marked police car into the housing complex where they were. Officer Pagan was driving another marked police car behind her while other officers waited at the rear of the complex in case Corey and Rahming attempted to flee. As Perez approached, she made eye contact with Corey and Rahming, and both men fled on foot.

Officer Perez followed Corey on foot after he split from Rahming. She alerted the other officers as to the suspects' directions and Officer Pagan drove to the north side of the complex to cut Corey off. Officer Pagan exited his car, approached Corey, and saw Corey take a gun out of his waistband and place it in a flower pot. Officer Pagan ordered Corey to the ground and another officer took him into custody. Corey was handcuffed, arrested, and placed inside a police car.

Inside the police car, Officer Perez questioned Corey but failed to advise him of his *Miranda* rights. Meanwhile, the remaining officers were arresting Rahming[1] and securing the evidence, including the stolen, black semi-automatic Lorcin .380 pistol loaded with seven rounds of ammunition that Corey had allegedly placed in the flower pot. In the police car, Officer Perez asked Corey standard booking questions including his name, date of birth, and his address. Officer Perez candidly testified that she did not inform Corey of his *Miranda* rights but was waiting for the detectives to do so.

Corey provided an address in the north end of Miami, which was quite far from the scene of the arrest. Officer Perez then asked Corey what he was doing in the area. Corey stated that he was visiting his girlfriend and added that he had a firearm on him because he knew he was going to get shot for not being from the area.

---

[1] Rahming's case was eventually dropped in state court.

## LEGAL ANALYSIS

### CUSTODY

The Supreme Court structured an accused's rights during custodial interrogation under the Fifth and Fourteenth Amendments in order to avoid compelled self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, (1966). In order to prevent undue interference with traditional police investigation, the Court required that before warnings need be given, the suspect must be both "in custody" and "under interrogation" by police. *Id.*

It is undisputed that Defendant Corey was in custody. The Government concedes that he was under formal arrest– handcuffed and placed in a police car from which he was not allowed to leave. Given that there is no argument as to whether Corey was briefly detained for police investigation, there is no need for examination of the case law involving investigative detentions under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

### BOOKING QUESTIONS VS. INTERROGATION

In determining that interrogation took place, it is necessary to distinguish an interrogation question from a booking question. Interrogation is "express questioning, but also any words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Routine booking questions regarding the age, height, weight, eye color, name, and current address are "reasonably related to the police's administrative concerns" and therefore exempt from *Miranda*'s reach. *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990).

However, questions that are reasonably likely to elicit an incriminating response, even if in a series of otherwise unoffending questions, may breach the booking exception. *Id.* at 601 n. 14. The parties do no cite an Eleventh Circuit case squarely addressing this issue, but examples

from other circuits help illustrate how a question pushed beyond the scope of the booking question exception becomes an interrogation. In *United States v. Virgen-Moreno*, the Fifth Circuit ruled the booking exception was breached when the suspect was repeatedly asked whether he resided at a certain address. 265 F.3d 276, 294 (5th Cir. 2001). Similarly, the Sixth Circuit excluded responses about where a defendant was from and when he arrived at an address because the questions were beyond the realm of routine booking questions and were likely to elicit incriminating responses. *United States v. Pacheco-Lopez*, 531 F.3d 420, 424 (6th Cir. 2008). In *United States v. Henley*, the booking exception was not extended to questions about whether a suspect owned a vehicle that the police officer believed was involved in illegal activity. 984 F.2d 1040, 1042-43 (9th Cir. 1993).

The question "what are you doing in the area?" is an investigatory question and is permissible before an arrest. After an arrest is made, any biographical questions necessary to an arresting officer's administrative duties are also permissible. In this case, given the distance from the defendant's home address and the police officer's training to investigate such matters, it is clear that she wanted to know why the defendant was there in the first place. That question, as phrased, considering that the officers already knew about the firearm, can be reasonably expected to elicit an incriminating response. The Court rejects the Government's initial reliance on the booking question exception to allow as evidence the defendant's statement despite the officer's failure to give the *Miranda* warnings.

### RESPONSIVENESS

The remaining issue is whether the defendant's statement that his girlfriend lives there and that he needed the gun for protection was responsive to the officer's question of why was he there. Statements that violate *Miranda* may be deemed admissible if they are voluntary or

-4-

unresponsive to a question. *See Oregon v. Hass*, 420 U.S. 714 (1975); *Harris v. New York*, 401 U.S. 222 (1971). Admissibility is a matter of determining whether the police were overreaching in a manner likely to elicit a response. *Innis*, 446 U.S. at 301. Howevr, *Miranda* does not prohibit all conversation between the suspect and a police officer even after an arrest. *See United States v. Castro*, 723 F.2d, 1527, 1532 (11th Cir. 1984). It is a context driven issue, since "[t]he case boils down to whether, in the context of a brief conversation, the officers should have known that the respondent would suddenly be moved to make a self-incriminating response." *Id*.

Context is determinative. Where a suspect responds to an officer's initial question with a voluntary statement aimed at committing another crime, it is not protected by *Miranda* because it is unresponsive. *Castro*, 723 F.2d at 1530. In *Castro*, an officer asked the suspect "What in the world is going on here?" as he investigated the heavy smell of marijuana in an apartment building stairwell. The suspect replied "You want money? We got money." *Id.* The Eleventh Circuit found the suspect was in custody but that his response was "totally voluntary and clearly outside the protective umbrella of *Miranda*." *Id.* If a challenged statement is made in response to a police statement, but not an interrogation or its functional equivalent, it too is not protected by *Miranda*. *See U.S. v. Smalls*, 617 F. Supp. 2d 1240, 1263 (S.D. Fla. 2008). The suspect in *Smalls* was under arrest and seated on the floor of an apartment when a detective asked him if there were any guns in the home. The defendant told him there were none. Upon finding a firearm a few feet away, the detective let out an exclamation and said "I thought you said there were no guns in the house!" The defendant stated the gun was for protection. *Id.* at 1249. The defendant's statement was ruled admissible since it was "volunteered and not responsive to the functional equivalent of interrogation." *Id.* Where a statement is spontaneous and only followed with a clarifying question from an officer, it is not given shelter by *Miranda*. *See United States*

*v. Villegas-Tello*, 319 Fed. App'x 871, 876 (11th Cir. 2009). If, at booking, a suspect responds to the charges he will likely face with his idea of what charges he is likely to be found guilty of, those statements are unresponsive and not protected by *Miranda. See United States v. Menichino*, 497 F.2d 935, 938 (5th Cir. 1974). As this list illustrates, the exchanges between police and a suspect can vary wildly. This often makes determining responsiveness very difficult for a court, let alone for a police officer at the front lines.

At oral argument defense counsel agreed that a hypothetical where a defendant blurted out an admission to another unrelated crime would be non-responsive to the question posed. Therefore if a defendant admitted to a murder or possessing drugs in his home while "responding" to a question of why he was there at the scene, it would indeed be non-responsive and voluntary. However, because the questioning officer already knew about the defendant fleeing and tossing the firearm, it is objectionably reasonable for the suspect to reasonably believe that he is being asked not only why he was there visiting his girlfriend, but why he was there *with* a firearm. Had the officer asked "why are you here with a firearm" the Court would readily conclude that the entire two-part answer was indeed a response to an interrogation. The fact that the officer did *not* specifically mention the firearm makes the Court's decision much more difficult, but nevertheless results in the same outcome. Without the prophylactic *Miranda* warnings, the Court has to follow the law that dictates exclusion of the entire statement. In doing so, the Court finds Officer Perez's entire testimony absolutely credible. Nevertheless, the Court holds that Officer Perez should not have deferred to the "detectives" to give the *Miranda* warnings before asking questions like "what are you doing in the area" to the handcuffed, arrested defendant.

## CONCLUSION

Our society and Constitution impose high demands upon our police officers. They are constantly at risk for their own safety while protecting our citizens, many of whom like the tipster in this case, live in high crime areas. These high expectations include the requirement of reading the *Miranda* warnings to those arrested and handcuffed in the back of a police car before questioning them. A police officer's job is difficult enough as it is, and it is preferable not to add the additional obligation of deciding whether a question of "what are you doing here" is a booking question or a question intended to elicit a response about the crime for which the defendant was arrested.

Because these facts fell somewhat short of the factual scenario of *Castro*, where the court found that suspect's answers non-responsive, the Court recognizes that a Government appeal would not be frivolous and may even have merit. Therefore, the trial will be continued in order to give the Government an opportunity to decide whether to appeal the granting of this non-dispositive motion to suppress the defendant's post arrest statements. The period of delay shall be excludable in accordance with the Speedy Trial Act. The Defendant, with serious prior felony convictions, shall remain detained until the conclusion of the appeal if such an appeal is undertaken by the Government. If the Government elects not to appeal, trial shall be set for the two week period commencing **July 16, 2012**, with calendar call set for Tuesday, **July 10, 2012 at 2:00 P.M.**

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of May, 2012.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to: Counsel of Record